# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | No. 1:18-CR-216 |
| | ) | |
| **PABLO MARIN LLANOS** | ) | Hon. Claude M. Hilton |
| **MARTINEZ,** | ) | |
| | ) | Trial: July 2, 2018 |
| **Defendant.** | ) | |

## MOTION TO COMPEL DISCOVERY

Because the government has refused to provide properly requested discovery

both material and favorable to Mr. Llanos Martinez's defense in this case, the

defense hereby moves to compel the government to produce those discrete categories

of documents.  The government alleges that the defendant "knowingly procured and

attempted to procure, contrary to law, his own naturalization" by "answering 'no' to

Question 3 of the Form N-445 (Notice of Naturalization Oath Ceremony)" in

violation of 18 U.S.C. § 1425(a).  Indictment, D.E. 19 ¶ 14.[1]  At trial, the

government must prove: (1) the defendant provided false information in a

naturalization proceeding; (2) the false information provided by the defendant

---

[1] Question 3 on the Form N-445 completed by Mr. Llanos Martinez asked:  "Have
you knowingly committed any crime or offense, for which you have not been
arrested; or have you been arrested, cited, charged, indicted, convicted, fined, or
imprisoned for breaking or violating any law or ordinance, including traffic
violations?"  Indictment, D.E. 19 ¶10.  As detailed in Mr. Llanos Martinez's
contemporaneously filed motion to dismiss, this confusing, compound question was
split into two questions in March 2003, and the form given to Mr. Llanos Martinez
in 2008 was expired and illegal.  For this reason, the defense argues in that motion
that the indictment should be dismissed.

1

related to a material matter; (3) the defendant acted knowingly; and (4) the

defendant procured naturalization as a result of the false testimony.  *See* 1 L. Sand,

et al., Modern Federal Jury Instructions, § 33-03, Instruction 33-14; *Maslenjak v.*

*United States*, 137 S. Ct. 1918, 1923 (2017) (holding government must show

defendant "lied about facts that would have mattered to an immigration official,

because they would have justified denying naturalization or would predictably have

led to other facts warranting that result").  The defense has repeatedly requested

discrete categories of documents relevant to each of the above-enumerated

elements, in keeping with the government's obligations under Federal Rule of

Criminal Procedure 16, *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United*

*States*, 405 U.S. 150 (1972).  The government has repeatedly refused to produce the

requested documents.

In particular, the defense seeks documents that could show three critical

facts:

(1)     By the time of the defendant's naturalization ceremony, the
        disputed "Question 3" (the heart of the government's case) had
        been rewritten into two separate questions to remove an
        inherent ambiguity in the previously compound question.  But,
        for unknown reasons, the defendant was not given the revised
        form.  Documents relating to the revision of Question 3 would
        tend to the show the government's awareness of a confusing,
        compound question and cast reasonable doubt on whether the
        defendant in fact provided "false information" when responding
        to a confusing, compound question and whether the defendant
        did so "knowingly." (Elements 1 and 3.)

(2)     At the time of the defendant's naturalization, the government's
        actual consideration of answers to Question 3 was far less
        material to the decision to grant naturalization than it now
        claims. (Elements 2 and 4.)

> (3) Notwithstanding Mr. Llanos Martinez's response to Question 3, the government, specifically the Department of Homeland Security ("DHS"), knew about his September 28, 2008 arrest and allowed him to proceed with naturalization in any event. (Elements 2 and 4.)

The documents the defense has requested and the government has refused to provide bear directly on these three important questions. In its requests to the government, including in discovery conference, the defense has explained to the government the relevance of the requested documents to the preparation of the defense. But the government has taken the entirely improper position that it need not produce materials it deems, based on its own view of the case, immaterial to the defense. Trial begins in one week. Accordingly, the defense requests that this Court compel the government to produce the responsive materials immediately.[2]

*    *    *

The defense seeks the production of the following categories of documents by way of this motion (the "Document Requests"):

1. All documents relating to the revision of Question 3 on the Form N-445, which was approved on or about March 1, 2003, including, but not limited to, documents regarding the reason for the revision and the implementation of the revision.

2. One copy of all versions of Form N-445 approved for use between January 1, 2000 and December 31, 2008.

3. All DHS, including U.S. Citizenship and Immigration Services ("USCIS"), policies, procedures, training materials, or other records on which the government's witnesses would rely for their testimony and/or would have

---

[2] The defense reserves its right to seek a continuance if the responsive material cannot be produced expeditiously, is voluminous, or requires follow-up.

relied in making decisions regarding the handling of the Form N-445 or naturalization proceedings in November 2008.

4. All records pertaining to the November 20, 2008 naturalization ceremony referred to in the indictment, including, but not limited to, sign-in sheets, attendance records, notices regarding the time and location of the ceremony, information handed out to attendees, and any other documents, recordings, notes or other materials that memorialized the events of that day.

5. All Form N-445s collected by USCIS at the November 20, 2008 naturalization ceremony referred to in the indictment.

6. All Form N-445s collected by USCIS in 2008 that were completed by individuals who answered "yes" to Question 3 (or Questions 3 or 4, as applicable) and were allowed to take the oath of citizenship.[3]

7. Records of any information within DHS, including USCIS and Immigration and Customs Enforcement ("ICE"), related to the government's knowledge of Mr. Llanos Martinez's criminal history, including, but not limited to, any communication or submission to and from the DHS data systems that contain this information.

8. Documents sufficient to show DHS policies and procedures related to the treatment of pending charges or arrests, specifically, policies and procedures of either ICE or USCIS relating to "derogatory data" entered into the DHS system, as contained in Exhibit G from the June 22, 2018 motions hearing.

While the Court's discovery order in this case gives the government until June 25, 2018 to comply with its discovery obligations, at the June 22, 2018 motions hearing, the government represented to this Court that discovery had closed. The government then inexplicably provided additional discovery within an hour after the motions hearing, but there is no indication that additional discovery is

---

[3] Although the government has objected that it cannot provide the material referred to in items 4 and 5 because it would contain personal identifying information ("PII") of third parties, nothing stops the government from producing the responsive materials with the PII redacted, as the defense has pointed out in its discovery discussions with the government, or otherwise making them available for inspection.

forthcoming and the government's dilatory tactics to date demonstrate that it has

no intention of acting on these requests. The motion to compel is therefore ripe.

## ARGUMENT

### A.      Legal Standards

The documents requested by the defense are discoverable pursuant to Federal

Rule of Criminal Procedure 16(a)(1)(E)(i), *Brady*, and *Giglio* because they are

"material to preparing [Mr. Llanos Martinez's] defense," are in the custody and

control of the government, Fed. R. Crim. P. 16(a)(1)(E)(i), and/or contain information

favorable to Mr. Llanos Martinez in that it is exculpatory or could be used to impeach

the government's witnesses, *Brady*, 383 U.S. at 87; *United States v. Bagley*, 473 U.S.

667, 676-77 (1985). Rule 16 is broader than *Brady*, but the documents requested by

the defense are properly discoverable under either framework. *See United States v.*

*Caro*, 597 F.3d 608, 620 (4th Cir. 2010) ("Rule 16 . . . is broader than *Brady*." (quoting

*United States v. Baker*, 453 F.3d 419, 424 (7th Cir. 2006))).

Federal Rule of Criminal Procedure 16 requires the government to produce to

the defense certain material relevant to the preparation of the defense or that the

government intends to use in its case in chief at trial. *See* Fed. R. Crim. P.

16(a)(1)(E)(i). Under Rule 16, documents are "material" if they "bear[] some abstract

logical relationship to the issues in the case. . . . There must be some indication that

the pretrial disclosure of the disputed evidence would [enable] the defendant

significantly to alter the quantum of proof in his favor." *United States v. Lloyd*, 992

F.2d 348, 351 (D.C. Cir. 1993) (internal citations and quotations omitted) (alterations

in original).  The D.C. Circuit further explained, "This materiality standard normally is not a heavy burden; rather, evidence is material as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *Lloyd*, 992 F. 2d at 351 (internal citations and quotations omitted); *see also Caro*, 597 F.3d at 620 (citing *Lloyd* with approval).  That last point is important: Documents may be material to the defense not because they themselves are favorable to the defense in some way ***but because they could lead the defense to uncover favorable evidence***.

*Brady* and its progeny requires the government to disclose evidence that may be favorable and material to the defense, *Brady*, 373 U.S. at 87, which includes evidence pertinent to the impeachment of a government witness, *Giglio*, 405 U.S. at 153-54.  Documents are "material" under *Brady* if there is a "reasonable probability" that the evidence could affect the result of the proceedings; a "'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682; *see also United States v. Caro*, No. 16-1, 2018 WL 2113285, at *9 (4th Cir. May 8, 2018) (noting documents would be material if they could persuade "at least one juror").

These *Brady* requirements are bedrock principles of federal criminal procedure.  Pursuant to them, the government has an independent obligation to

identify any material in its possession that may be subject to *Brady* and its progeny.[4]

*See, e.g.*, *Kyles v. Whitley*, 514 U.S. 419, 437 (1995); *see also* DOJ, Memo for Dept.

Prosecutors (Jan. 4, 2010) (describing prosecutors' duty to search for exculpatory

evidence, as embodied in the U.S. Attorneys Manual § 9-5.001[B.2]).[5] "As pointed out

by [the defense] in referencing the DOJ *Brady*/*Giglio* guidelines, and as well

established by case law, the *prosecution* has the duty to *affirmatively* scour those

records of the agencies considered the 'government' for purposes of the criminal case

in order to determine and acquire those materials which would be considered *Brady*

exculpatory and *Giglio* impeaching." *United States v. Salyer*, No. S-10-0061, 2010

WL 3036444, at *10 (E.D. Cal. Aug. 2, 2010) (affirming prior order directing

government to identify *Brady* material). Thus, the defense is only asking for what

the government has an obligation to do already.[6] Moreover, when the defense makes

---

[4] This obligation is rooted in no small part in the fact that a "prosecutor's role transcends that of an adversary: he 'is the representative not of an ordinary party to a controversy, but of a sovereignty . . . whose interest . . . in a criminal prosecution is not that it shall win a case, but that justice shall be done.'" *United States v. Blankenship*, No. 5:14-CR-00244, 2015 U.S. Dist. LEXIS 76287, at *17-18 (S.D.W.V. June 12, 2015) (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)); s*ee also United States v. Hsia*, 24 F. Supp. 2d 14, 30 (1998) (same and quoting *Berger*).

[5] Available at <https://www.justice.gov/dag/memorandum-department-prosecutors>.

[6] For similar reasons, the government does not need to know the defense's theory of the case before it can identify *Brady* and *Giglio* material. The government's *Brady* and *Giglio* obligation exists in every case, independent of any defense theory: *Brady* and *Giglio* material is that which has a potential to be favorable to the defense in defending against the government's accusations and impeaching the government's witnesses, respectively. The government does not need to know what the defense plans to say to know what would contradict the charged allegations or the government's witnesses. *See Salyer*, 2010 WL 3036444 at *17-18 (rejecting

a specific request for specific items and demonstrates their relevance and materiality, the government's steadfast refusal to produce documents or raise the issue with the court is inexcusable:

> Although there is, of course, no duty to provide defense counsel with unlimited discovery of everything known by the prosecutor, if the subject matter of such a request is material, or indeed if a substantial basis for claiming materiality exists, it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the problem to the trial judge. When the prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable.

*United States v. Agurs*, 427 U.S. 97, 106 (1976).

Contrary to the Supreme Court's guidance, the government has taken two tacks in its responses to the defense's discovery requests: Primarily, it has ignored these requests. Secondarily, the government has asserted that the documents the defense requests are irrelevant, relying entirely on the government's view of the case and disregarding Mr. Llanos Martinez's right to prepare his defense. In formulating its position, the government appears to overlook or ignore that (a) documents may be relevant to the defense for varied reasons, not just because they themselves are directly favorable, but also because they might be used to impeach a government witness or lead the defense to uncover other favorable evidence; and (b) it actually has an obligation to discover what favorable information it might have. Indeed, the government's approach to discovery in this case appears to be that it need do no more than produce the documents it may rely on in its case in chief. Of course this is

---

government argument that it could not identify *Brady*/*Giglio* material without knowing the defense's theory of the case).

impermissible, contrary both to the law and to the spirit of *Brady*, as expressed in *Berger*. As a result, the Court should order the government to produce the requested documents.

**B.      Documents Relating to the Revision of Question 3**

Documents relating to the revision of Question 3[7] are undoubtedly "material" under Rule 16 or "favorable" and "material" under *Brady* and *Giglio*. Question 3 of Form N-445 was split into two questions as early as March 1, 2003, more than five years before Mr. Llanos Martinez's naturalization. *See* Defense Motion to Dismiss (filed June 25, 2018). Indications are that the question was split precisely because it is a confusing and compound question. *See, e.g., United States v. Rendon-Marquez*, 79 F. Supp. 2d 1361, 1362-64 (N.D. Ga. 1999) (holding that Form N-445 question that is identical to Question 3 in this case was a "compound question that is confusing and ambiguous" and granting motion for judgment of acquittal because defendant's response was literally true as to part of question); Memorandum from Louis D. Crocetti, Associate Commissioner, Office of Examinations, *Naturalization Process Changes Memorandum*, HQ 70/33, at Part 1, No. 1 (May 1, 1996), https://oig.justice.gov/special/0007/bappendix.htm (explaining working group is revising naturalization application to make it less "complex" and "confusing").[8] The requested discovery will likely confirm why Question 3 was split into two questions

---

[7] These documents would be responsive to Document Requests 1 and 2.

[8] This memorandum is Appendix B to the Department of Justice, Office of the Inspector General's July 2002 Report: *An Investigation of the Immigration and Naturalization Service's Citizenship USA Initiative*, available at < https://oig.justice.gov/special/0007/listpdf.htm>.

and why, if the form had been revised for clarity before the defendant's naturalization ceremony, it was not used at the defendant's naturalization ceremony. Mr. Llanos Martinez is entitled to the requested documents.

Indeed, the information requested by Mr. Llanos Martinez is very similar to the information requested by the defendant in *United States v. Naegele*, 468 F. Supp. 2d 150, 154–55 (D.D.C. 2007), which the court ordered the government to produce. In *Naegele*, the defendant was indicted for making false statements in relation to his bankruptcy case and bankruptcy fraud. The court granted the defendant's motion to compel production of any "guidance materials or commentary from the U.S. Trustee Program suggesting (a) that the standardized bankruptcy forms are ambiguous in material respects; (b) that errors identical or similar to those defendant is alleged to have made are common or frequent among debtors; or (c) that defendant's alleged erroneous readings of the forms are in fact correct." *Id*. at 154.[9] The requested documents will also inform the defense's cross-examination of any witnesses the government uses to either defend the wording of Question 3 in the form it was presented to Mr. Llanos Martinez and/or explain the revision. These documents go directly to the first and third elements of the charged offense: whether the defendant

---

[9] Although the court declined to require the government to produce specific debtor information or the bankruptcy filings of any particular debtor, *Naegele*, 468 F. Supp. 2d at 154, Mr. Llanos Martinez's request for the N-445 applications of applicants who responded "yes" to Question 3 (or Questions 3 or 4, as applicable) is distinctly narrower, less intrusive, and less burdensome than the defendant's request in *Naegele*.

made a "false statement" when selecting "no" to a compound question and whether the defendant did so "knowingly," respectively.

## C. Documents Relating to the Materiality of Question 3

Documents relating to the government's treatment of responses to Question 3 (or Questions 3 and 4, as applicable), generally,[10] and the government's knowledge of Mr. Llanos Martinez's criminal history ***before his naturalization and separate and apart from his response to Question 3,*** specifically,[11] are also discoverable. They are material under Rule 16 and favorable and material under *Brady* and *Giglio*. At trial, the government must show that the alleged false statement was material and the defendant procured naturalization as a result. "To decide whether a defendant acquired citizenship by means of a lie, a jury must evaluate how knowledge of the real facts would have affected a reasonable government official properly applying naturalization law." *Maslenjak*, 137 S. Ct. at 1921.

In this case, the defense believes the government may be ascribing a belated and inflated importance to Mr. Llanos Martinez's response to Question 3. To further develop this theory of defense, the defense is entitled to documents demonstrating how the government actually handled applications where the applicant responded "yes" to Question 3 (or Questions 3 and 4, as applicable) in 2008, the year of Mr. Llanos Martinez's naturalization.

---

[10] These documents would be responsive to Document Requests 3 through 6.

[11] These documents would be responsive to Document Requests 7 and 8.

It cannot be assumed that a "yes" answer meant the individual was barred from naturalization that day.  Mr. Llanos Martinez is entitled to know: (1) the disposition of naturalization applicants who selected "yes" on Form N-445; (2) the process by which that disposition occurred; and (3) the identities of potential witnesses who were naturalized notwithstanding answering "yes" to the relevant question(s).  This is because the requested evidence may demonstrate that the answer to Question 3 (or Questions 3 and 4, as applicable) was not actually material to Mr. Llanos Martinez's naturalization, because it was not material as a matter of policy or was not considered material in the cases of others'.  *See United States v. Thomas*, 766 F. Supp. 372, 375 (W.D. Pa. 1991) (ordering the government to produce relevant memorandums, directives, orders, and inventory records); *United States v. Stever*, 603 F.3d 747, 753-57 (9th Cir. 2010) (reversing conviction, in part, because district court improperly denied motion to compel evidence in government's possession relating to Mexican drug trafficking organizations ("DTOs") where evidence could tend to show DTOs were responsible for marijuana plants on defendant's property and not defendant).

Moreover, the defense believes it can show that the government actually *knew* the facts it alleges Mr. Llanos Martinez unlawfully failed to disclose on the Form N-445, and he was naturalized anyway.[12]  If this is the case, Mr. Llanos Martinez did not procure naturalization as a result of the alleged false statement

---

[12] See Exhibits F and G to the Declaration of Noah P. Sullivan in Support of Defendant's Motion to Dismiss, ECF No. 35.

(Element 4) and his false statement did not relate to a material matter (Element 2). If the government had actual knowledge of the allegedly "correct" answer to Question 3, the government will not be able to show that "knowledge of the real facts would have affected a reasonable government official properly applying naturalization law." *Maslenjak*, 137 S. Ct. at 1921. In this case, the requested documents may show that knowledge of the real facts actually *did not affect* a reasonable government official properly applying naturalization law.

Mr. Llanos Martinez has a right to discovery of these documents, or, if they do not exist (or perhaps no longer exist), the right to know that as well. Mr. Llanos Martinez is not required to *definitively know*, at this juncture, that the documents exist and are material to his case. Indeed, the defense has repeatedly requested these materials, and, rather than state that the materials do not exist, the government has refused to provide them—indicating that, in fact, the materials likely *do* exist.

Even under *Brady*, the more restrictive standard, a plausible belief is all that is required, especially when the requested documents are defined with sufficient particularity. This is no mere fishing expedition.

> When . . . an accused cannot possibly know, but may only suspect, that particular information exists which meets these requirements [i.e., favorable and material], he is not required, in order to invoke the right, to make a particular showing of the exact information sought and how it is material and favorable. Instead, he need only at that stage 'at least make some plausible showing' that it does exist and how it would be 'both material and favorable to his defense.'

*Love v. Johnson*, 57 F.3d 1305, 1313 (4th Cir. 1995) (quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 58 & n.15 (1987)) (finding defendant was entitled to, at the very least, *in camera* inspection of the requested documents). In *Ritchie* the Supreme Court held that a criminal defendant was entitled to *in camera* review of state agency documents "because the file might contain the names of favorable witnesses, as well as other, unspecified exculpatory evidence." *Ritchie*, 480 U.S. at 44, 57-58. The Court held that no further representation regarding the contents of the records—which the defendant could not possibly know—was required. Moreover, the Court noted that the "degree of specificity" of the defendant's request was relevant to the determination of materiality. *Ritchie*, 480 U.S. at 58 n.15; *see also United States v. King*, 628 F.3d 693, 703 (4th Cir. 2011) (finding defendant "identified the information sought with sufficient particularity so as to trigger his right to an *in camera* inspection").

## CONCLUSION

For the foregoing reasons, the defense respectfully requests that the Court order the government to provide the requested discovery as soon as possible before trial begins on July 2, 2018, and that, if necessary, the defense be permitted sufficient time to review and follow-up on these documents before the trial begins.

> Respectfully submitted,
>
> PABLO MARIN LLANOS MARTINEZ
>
> By Counsel,
>
> Geremy C. Kamens
> Federal Public Defender

By:    /s/ Cadence Mertz  
        Cadence Mertz  
        Va. Bar No. 89750  
        Assistant Federal Public Defender  
        Elsbeth Bennett  
        Admitted *pro hac vice*  
        Office of the Federal Public Defender  
        1650 King St, Suite 500  
        Alexandria, VA 22314  
        (703) 600-0840 (T)  
        (703) 600-0880 (F)  
        Cadence_Mertz@fd.org

        Noah P Sullivan  
        Va. Bar. No. 82698  
        Katherine M. Golden  
        Va. Bar No. 89104  
        GIBSON, DUNN & CRUTCHER LLP  
        1050 Connecticut Avenue, NW  
        Washington, DC 20036  
        (202) 955-8500 (T)  
        nsullivan@gibsondunn.com  
        kgolden@gibsondunn.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 25, 2018, I filed the foregoing document electronically through the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record.

A courtesy copy of the foregoing pleading will be delivered to Chambers within one business day of this filing.

/s/ Cadence Mertz
Cadence Mertz
Va. Bar No. 89750
Assistant Federal Public Defender
Office of the Federal Public Defender
1650 King St, Suite 500
Alexandria, VA 22314
(703) 600-0840 (T)
(703) 600-0880 (F)
Cadence_Mertz@fd.org