**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **No. 1:18-CR-216** |
| | ) | |
| **PABLO MARIN LLANOS** | ) | **Hon. Claude M. Hilton** |
| **MARTINEZ,** | ) | |
| | ) | **Sentencing: September 21, 2018** |
| **Defendant.** | ) | |

### DEFENDANT'S POSITION ON SENTENCING FACTORS

Pablo Marin Llanos Martinez has accepted responsibility for unlawfully procuring citizenship as a result of a false statement at his naturalization ceremony ten years ago. He has conceded to forfeiting his United States citizenship. He has agreed to a judicial removal order, hastening his deportation to his native Bolivia. He has been held without bond in federal custody since his arrest on April 11, 2018. Mr. Llanos Martinez acknowledges the seriousness of his conduct; indeed, its unfortunate impact on his life will be profound. He will return to Bolivia as a man more mature than he was 10 years ago when he committed this offense. But, and as further explained below, prolonging his incarceration, at taxpayer expense, serves no useful purpose under these circumstances. A sentence of six months is sufficient, but not more than necessary, to achieve the aims of 18 U.S.C. § 3553(a) in this case.

The defense has reviewed the pre-sentence investigation report (PSR) with Mr. Llanos Martinez and objects to the PSR's application of a 4-point enhancement under USSG § 2L2.2(b)(3) for obtaining a U.S. passport. As further discussed below, the

enhancement is inapplicable in this case where the passport was not obtained until eight years after the offense was completed.   The properly calculated Guidelines result in a total offense level of 6, a Criminal History Category VI, and an advisory Guidelines range of 12 to 18 months, as the parties agreed in the Plea Agreement.

## I.   BACKGROUND

On March 15, 2018, a criminal complaint and affidavit were filed under seal in this district charging that Mr. Llanos Martinez had violated 18 U.S.C. § 1425(a).   An arrest warrant was issued and executed on April 11, 2018, and Mr. Llanos Martinez was subsequently indicted on one count of immigration fraud, in violation of 18 U.S.C. § 1425(a).   A superseding indictment was filed on June 27, 2018, altered only in the particulars.

On July 2, 2018, Mr. Llanos Martinez appeared before this Court and pled guilty to the superseding indictment, pursuant to a written agreement with the government.   The plea agreement laid out the parties' understanding of the Guidelines: base offense level 8, minus 2 points for acceptance of responsibility, for a total offense level of 6, a Criminal History Category VI, and an advisory sentencing range of 12 to 18 months.   The plea agreement also bound the parties to an agreed-upon sentencing range between 6 months and 10 months.

This Court continued the sentencing proceedings to September 21, 2018, so that a PSR could be prepared.   An ICE detainer is in place, and the parties have agreed to present this Court at sentencing with a judicial removal order compelling

Mr. Llanos Martinez's deportation and eliminating the need for ICE to enter such an order.

## II.   LEGAL STANDARD

After *United States v. Booker*, the Sentencing Guidelines range is advisory: courts must consider it among more than a half-dozen statutory sentencing factors enumerated in 18 U.S.C. § 3553(a).[1]   *See* 543 U.S. 220, 259-60 (2005); *see also Kimbrough v. United States*, 552 U.S. 85 (2007) (Sentencing Guidelines are mere advisory tools to be considered alongside other statutory considerations set forth in 18 U.S.C. § 3553(a)); *Gall v. United States*, 552 U.S. 38 (2007) (same).[2]   The primary directive in the language of § 3553(a) is to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing.   After *Booker*,

---

[1]  Those factors include: (a) the nature and circumstances of the offense and the history and characteristics of the defendant, (b) the kinds of sentences available, (c) the guideline range, (d) the need to avoid unwarranted sentencing disparities, (e) the need for restitution, and (f) the need for the sentence to reflect the following: the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense, to afford adequate deterrence, to protect the public from further crimes of the defendant and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment.   *See* 18 U.S.C. § 3553(a).

[2]  In two more recent summary reversals, the Court further made clear that the Guidelines cannot be used as a substitute for a sentencing court's independent determination of a just sentence based upon consideration of the statutory sentencing factors.   *Nelson v. United States*, 129 S. Ct. 890 (2009); *Spears v. United States*, 129 S. Ct. 840 (2009).   "The Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable."   *Nelson*, 129 S. Ct. at 892 (emphasis in original).   In other words, a sentencing court may not rely on the Sentencing Guidelines range as a default to be imposed unless a basis exists to impose a sentence outside that range.   Rather, the court must weigh each of the factors and impose a sentence that constitutes the least amount of imprisonment necessary pursuant to Section 3553(a).

*Kimbrough*, and *Gall*, sentencing courts must impose the minimum sentence that is sufficient to accomplish the objectives of § 3553(a).  *See Gall*, 552 U.S. at 40 (reinstating a probationary sentence where advisory sentencing range was 30-37 months).

## III.   THE NATURE OF THE OFFENSE

Mr. Llanos Martinez legally immigrated to the United States as a teenager in 1999.  His father brought him over from Bolivia, where Mr. Llanos Martinez and his two sisters had been living, nearly on their own.  Mr. Llanos Martinez attended and graduated from high school in Arlington, Virginia.  In 2007, he hired an attorney and began the process of applying for naturalized citizenship.  He completed the lengthy citizenship application.  He sat for a naturalization interview with U.S. Citizenship and Immigration Services.  It is undisputed that he made no material misstatements during either.

On November 20, 2008, Mr. Llanos Martinez appeared in this courthouse for his naturalization ceremony.  Upon entering the courtroom for the ceremony, Mr. Llanos Martinez was handed a form N-445, which sought to update certain information already gathered by the government during the naturalization process. At the time, Mr. Llanos Martinez had been arrested and charged with criminal conduct in Arlington.  He also had engaged in criminal conduct for which he was not arrested until some months later.  Confronted with a question seeking information about any recent arrests or uncharged criminal conduct, Mr. Llanos Martinez

checked "no."[3]  That answer was untrue.  He handed in his completed form and was then sworn in as a U.S. citizen.

Over the next three years, Mr. Llanos Martinez was convicted of a number of criminal offenses and probation violations.  As a result, he was incarcerated in Virginia from 2011 until 2016.  In 2016, he was released onto probation, with which he rigorously complied.  Although nearly ten years had passed since his naturalization date, in April 2018, Mr. Llanos Martinez was arrested and charged with this offense based on the single question on the N-445 form.  He has been incarcerated ever since.

## IV.   THE SENTENCING FACTORS SET FORTH IN 18 U.S.C. § 3553(a) SUPPORT A SENTENCE OF SIX MONTHS

The correct advisory Guidelines range is 12 to 18 months, based on a total offense level of 6 (accounting for acceptance of responsibility) and a Criminal History Category of VI, just as the parties have agreed.  *See* Plea Agreement, Dkt. No. 54. For at least the following five reasons the defense submits that a downward variance, to a sentence of no more than 6 months, is appropriate here:  First, incarceration is only one of a number of severe sanctions that will be imposed on Mr. Llanos Martinez in this case, including the loss of his U.S. citizenship, deportation and a permanent bar on his return to the United States where almost all of his immediate family live. Second, Mr. Llanos Martinez has fully accepted responsibility for his conduct and

---

[3] That question asked, "[h]ave you knowingly committed any crime or offense, for which you have not been arrested or have you been arrested, cited, charged, indicted, convicted, fined, or imprisoned for breaking or violating any law or ordinance, including traffic violations?"  *See* Statement of Facts, Dkt. No. 55.

agreed to the imposition of those additional sanctions.   Third, the offense was committed almost a decade ago, at a very difficult time in Mr. Llanos Martinez's life, one he has worked hard to put behind him.   Fourth, because Mr. Llanos Martinez will be deported as soon as this case terminates—he has even offered to buy his own plane ticket to Bolivia—further incarceration at taxpayers' expense makes little sense under these circumstances.   Fifth, a sentence of 6 months properly accounts for the § 3553(a) sentencing factors **and** the parties' bargained-for agreement to cabin the sentencing range in this case to between 6 and 10 months.   *See* Plea Agmt., Dkt. No. 54, ¶ 4.

### A. The Correctly Calculated Total Offense Level Is 6, Accounting for Acceptance of Responsibility.

The PSR incorrectly applied a 4-point enhancement under § 2L2.2(b)(3) to the base offense level of 8, apparently because, eight years after the offense was committed, Mr. Llanos Martinez obtained a passport.   This enhancement is wrongly applied here, where obtaining the passport was unrelated to the offense conduct.   The offense was immigration fraud in connection with the false answer on the N-445. That conduct occurred in 2008 and was completed in 2008, when Mr. Llanos Martinez was naturalized.   He did not get a U.S. passport until eight years later.   It is elementary that conduct occurring eight years after the *completion* of an offense and not committed in connection with or in an attempt to avoid detection cannot serve as a basis for enhancing the offense level.   But even if the gulf between the offense conduct and the procurement of the passport could be overlooked, the enhancement

is inapplicable because there is no evidence the passport was fraudulently obtained or used.

The passport enhancement contained in USSG § 2L2.2(b)(3) states, "[i]f the defendant fraudulently obtained or used (A) a United States passport, increase by 4 levels; or (B) a foreign passport, increase by 2 levels."   A basic premise of the Sentencing Guidelines is that offense levels and enhancements are applied for *offense conduct.   See, e.g.*, USSG § 1B1.1(2) (guidelines are determined based on "any appropriate *specific offense* characteristics" (emphasis added)).   *See also* USSG § 1B1.1 App. Note 1(H) (defining "offense" as "the offense of conviction and all relevant conduct").   Relevant conduct is conduct that occurred "during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection."   *See* USSG § 1B1.3.   Therefore, for the § 2L2.2's passport enhancement to apply the defendant must have "fraudulently obtained or used (A) a United States passport" during the offense of conviction, its commission, in preparation for it or in attempting to avoid detection.   Because Mr. Llanos Martinez did not obtain a U.S. passport at any point during what could be considered the offense or relevant conduct, the passport enhancement does not apply.

The offense in this case is the fraudulent procurement of U.S. citizenship.   That occurred on November 20, 2008.   Immigration fraud is not a continuing offense.   The offense conduct was completed in 2008.   Mr. Llanos Martinez did not obtain a U.S. passport until eight years later, in 2016.   He did not do so "in course of attempting to avoid detection."   Thus, on the most basic level, procuring a passport eight years after

7

the commission of the offense conduct cannot enhance the guideline because it is neither offense conduct nor relevant conduct.

Even if this logical leap could be overcome such that the enhancement might be applicable, it still would not apply on these facts. That is because the enhancement is applied where the passport was fraudulently obtained or used. To have been fraudulently obtained (there is no evidence of fraudulent use), Mr. Llanos Martinez must have had knowledge that his procurement of the passport was unlawful. It had been eight years since Mr. Llanos Martinez was naturalized when he went to get a passport. The government would have to provide evidence that in 2016, having been a U.S. citizen for eight years, Mr. Llanos Martinez was aware that he could not obtain a U.S. passport or that doing so would be unlawful. To have known that, Mr. Llanos Martinez would have had to know—in the unlikely case that he remembered—that his single false response on the form N-445 rendered his citizenship invalid. The government has provided no evidence to support such a conclusion. On the contrary, the government has agreed that the sentencing Guidelines should not include the enhancement.

Unsurprisingly, the defense has found no legal precedent supporting the application of the passport enhancement on the facts of this case. In the Fourth Circuit, only one case appears to have applied the passport enhancement. *See United States v. Horton*, 497 F. App'x 302 (4th Cir. 2012). There, the enhancement was applied when the defendant actually forged a signature on a passport application for his daughter. *See id.* at 303. That is, the offense directly involved the procurement

8

of a passport and the fraud was a knowing, affirmative act made in the passport application itself. Although caselaw discussing the passport enhancement is sparse, the other courts that have considered it did so in situations similar to that in *Horton*. *See, e.g.*, *United States v. Hayes*, 358 F. App'x 685, 688 (7th Cir. 2009) (defendant affirmatively made false statement on passport application itself); *United States v. Vrancea*, 136 F. Supp. 3d 378, 395 (E.D.N.Y. 2015), *aff'd*, 688 F. App'x 94 (2d Cir. 2017) (defendant used multiple false foreign passports issued in other peoples' names). Here, Mr. Llanos Martinez's 2016 passport application is wholly separate from his charged conduct and there is no separate allegation of fraud in the course of his procurement of the passport.

Properly calculated without the passport enhancement, the total offense level is 6 (a base offense level 8 minus 2 points for acceptance). The defense agrees with the PSR's calculation of Mr. Llanos Martinez's criminal history, which is a VI. Thus, the correct advisory Guidelines range is 12 to 18 months.

### B. Mr. Llanos Martinez's Personal History and Character Counsel In Favor of a Variant Sentence of Six Months.

Mr. Llanos Martinez is now 36 years old. His life is pockmarked with difficult periods. However, in the two years since his release from Virginia state custody in July 2016, Mr. Llanos Martinez has made a concerted and successful effort to begin turning his life around. *See* Letter of Pablo Llanos Martinez (attached as Exhibit A); Ltrs. of Juan Carlos Llanos, Marlene Llanos & Carlos Pedraza (attached as part of Exhibit B). Those efforts, particularly against the backdrop of some of the obstacles Mr. Llanos Martinez has overcome, should be acknowledged.

Mr. Llanos Martinez's early life was bleak and set the stage for an intense, but conscribed, period of poor decisions in quick succession in his mid-20s. That period is now a decade behind him. Given the difficulty of his start and the extent to which he veered off course, Mr. Llanos Martinez deserves credit for his recent success starting to put his life back together. Unfortunately, his troubled past has managed to drag him back down, and Mr. Llanos Martinez now must start anew in Bolivia, stripped of his U.S. citizenship.

Mr. Llanos Martinez was born the youngest of four siblings in a modest area of La Paz, Bolivia. His parents fought. When they separated, Mr. Llanos Martinez's father immigrated to the United States along with Mr. Llanos Martinez's older brother. Mr. Llanos Martinez was about 7 years old at the time. Mr. Llanos Martinez's father was a stable presence and the breadwinner in the family. He left the children in the care of their mother, but she would leave them alone for weeks at a time. The children had to fend for themselves, often finding themselves without enough food. Before he was even a teenager, Mr. Llanos Martinez began working to provide for himself and his sisters. *See* M. Llanos Ltr. & J.C. Llanos Ltr. (Ex. B).

When his mother was home, however, the situation was not better. Mr. Llanos Martinez remembers his mother drinking heavily. Her new partner was an alcoholic and abused the Llanos children. Mr. Llanos Martinez remembers his mother choosing her partner over the needs of her children.

Alcohol was always around. As a young boy, Mr. Llanos Martinez turned to alcohol to cope with the stress of his living environment and the challenges of trying

to earn a living to support himself and his sisters when he was just 10 years old.  *See* P. Llanos Martinez Ltr. (Ex. A).  In 1999, when Mr. Llanos Martinez was 16, his father sent for him and his sister, Marlene, having arranged for them finally to immigrate (legally) to the United States.

Mr. Llanos Martinez entered high school in Arlington, Virginia, and his drinking subsided.  He lived with his sister, his father, and his father's new partner. Mr. Llanos Martinez's older brother had joined the U.S. Marines Corps and was away from home.  Mr. Llanos Martinez attended Wakefield High School in Arlington, graduating on schedule, having learned English quickly to catch up to his classmates.

After graduating in 2003, Mr. Llanos Martinez began a long-term relationship with a young woman.  They moved in together.  Mr. Llanos Martinez worked two jobs to support them.  He was in love.  He dreamed of having a family, especially being a father.  Unfortunately, the young woman had unsavory friends, and Mr. Llanos Martinez fell in with her social network.  In 2007, Mr. Llanos Martinez's girlfriend became pregnant.  Mr. Llanos Martinez eagerly anticipated being a father and building a family.  *See* P. Llanos Martinez Ltr. (Ex. A).

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████   This was a turning point for Mr. Llanos Martinez.  Unable to cope with his grief, he turned back to alcohol.  *See* P. Llanos Martinez Ltr. (Ex. A).  He describes drinking from the time he got up until the time he passed out at night, only to do it

all over again the next day.  He hung out with his girlfriend's friends, who made bad choices and committed crimes.  Mr. Llanos Martinez followed them down that path.

He was on this path when, in 2008, he was preparing to become a U.S. citizen, Mr. Llanos Martinez participated in a spree of car break-ins during the fall.  That September, he was arrested for some of the conduct.  In November 2008, he was sworn in as a U.S. citizen.

Not long after the swearing-in ceremony, in early 2009, Mr. Llanos Martinez was arrested in connection with those offenses.  He remained in and out of trouble until August 2011 when he was convicted of his third DWI offense in five years.  The conviction triggered a probation violation, and, all told, Mr. Llanos Martinez was sentenced to serve sentenced to serve 68 months in custody.  He was released on July 8, 2016.

Since his release, Mr. Llanos Martinez has worked diligently to turn his life around.  He has been entirely compliant with the terms of his probation.  He forged a good relationship with his Fairfax County probation officer.  He completed the classes he was ordered to complete, both Virginia's ASAP class and substance abuse counseling.  He has not had a drink in seven years, except for toasting at his 2017 wedding.  He was in the process of getting his driver's license reinstated.  He lived quietly at his sister's home, working for his brother-in-law's flooring company.  His nephews, with whom he lived, began looking up to him and counting on his presence. *See* M. Llanos & C. Pedraza Ltrs. (Ex. B).

Mr. Llanos Martinez's probation officer trusted him enough to permit him to travel twice to Bolivia while he was on supervision.  He returned to Bolivia to help his elderly mother arrange her affairs and bring her to the United States.  While there, he reconnected with his childhood sweetheart.  They married in 2017.  He planned to bring her and her two daughters to the United States to live with him once he had built a stable foundation.  By all accounts, Mr. Llanos Martinez was beginning to overcome his troubled past.

His arrest on this offense has permanently changed the trajectory of his life, though he is determined to make the best of it.  Mr. Llanos Martinez entered a guilty plea before this Court.  He elected to voluntarily relinquish all rights to legally remain in or return to the United States, notwithstanding that his father, mother, siblings, half-siblings and nephews all live here.  He did so to avoid a prolonged legal battle, and to return to his wife and living a productive life as soon as possible.  He has asked the government if there is more he can do to speed his removal, including paying for his own one-way airplane ticket.  Having accepted the loss of his U.S. citizenship, Mr. Llanos Martinez is ready to return to Bolivia to begin building a life there alongside his wife and her daughters.

While incarcerated awaiting the outcome of this case, Mr. Llanos Martinez has demonstrated his commitment to be better than his past might dictate.  Almost since his arrival at the Alexandria Adult Detention Center, he obtained a job in the facility kitchen—a rarity for a federal detainee.  That work earned him recognition in the

form of a certificate of excellence for his "outstanding performance and exceptional commitment to team work." *See* Certificate (attached as Exhibit C).

### C.    A Six-Month Sentence Achieves Deterrence and Promotes Respect for the Law.

A sentence of 6 months in this case is sufficient but not more than necessary to achieve the purposes of sentencing set out in 18 U.S.C. § 3553(a).  Six months in custody for an individual who has already agreed to forego U.S. Citizenship and return permanently to his home country is penalty enough.  Mr. Llanos Martinez recognizes that he incorrectly answered a question on his N-445 form.  He has admitted that, and he will pay for it for the rest of his life by being separated from most of his family.  He has taken full responsibility for his past convictions as well and duly served his time for those transgressions.

This is not a case in which a more significant sanction is necessary to effect individual deterrence.  Mr. Llanos Martinez's conduct in obtaining his citizenship was an isolated act.  To the extent it speaks to a tendency toward criminality, Mr. Llanos Martinez has attempted to make clear that he is now making much better choices.  This offense, like all of his prior offenses, dates to years ago.  Moreover, this is not an illegal re-entry case in which recidivism tends to be a significant concern.  Mr. Llanos Martinez has never illegally entered the United States.

Nor is a sentence of more than 6 months necessary to effect general deterrence. The period of imprisonment is not the principal deterrent in this type of case:  The loss of prized U.S. citizenship and removal to one's native country acts as the primary sanction.  In Mr. Llanos Martinez's case, that sanction will be particularly severe

14

because almost all of his immediate family live in the United States.  He will not be able to see them easily, as visits will depend on them traveling to Bolivia.

Although Mr. Llanos Martinez does have a significant criminal history, that conduct is accounted for in the advisory Guidelines by his Criminal History Category. Moreover, that conduct is bookended on either side by evidence that Mr. Llanos Martinez wants to and is capable of living a law-abiding life.  Mr. Llanos Martinez's criminal conduct—including this offense—is now dated.  His efforts to get his life back on track should be acknowledged in any sentence imposed.  To throw the book at him given the effort he has put into changing his course would send exactly the wrong message:  That one's positive efforts do not matter.

Mr. Llanos Martinez has learned a great deal from this experience and plans to continue living a productive life in Bolivia.  The strides he has made in the past two years have given him a sense of pride in himself that he previously lacked.  He wants to build on that, even if he must do it in Bolivia.  Indeed, in some respects he looks forward to the relatively fresh start that returning there will afford him.  He also looks forward to strengthening his bond with his wife and to looking after her two daughters.  His marriage offers him the opportunity finally to be a father and build a family.  And, that is what he is focused on now.

## V.    CONCLUSION

For the foregoing reasons, Mr. Llanos Martinez respectfully requests that this Court impose a sentence of 6 months.  The defense additionally asks that this Court recommend to the Bureau of Prisons that he serve his sentence in a facility as close

to Northern Virginia as possible so that he may be close to family before he is deported.

                          Respectfully submitted,

                          PABLO MARIN LLANOS MARTINEZ

                          By Counsel,
                          Geremy C. Kamens
                          Federal Public Defender

By:    /s/ Cadence Mertz
                          Cadence Mertz
                          Va. Bar No. 89750
                          Assistant Federal Public Defender
                          Office of the Federal Public Defender
                          1650 King St, Suite 500
                          Alexandria, VA 22314
                          (703) 600-0840 (T)
                          (703) 600-0880 (F)
                          Cadence_Mertz@fd.org

                          Noah P. Sullivan
                          Va. Bar. No. 82698
                          Katherine M. Golden
                          Va. Bar No. 89104
                          GIBSON, DUNN & CRUTCHER LLP
                          1050 Connecticut Avenue, NW
                          Washington, DC 20036
                          (202) 955-8500 (T)
                          nsullivan@gibsondunn.com
                          kgolden@gibsondunn.com

## CERTIFICATE OF SERVICE

      I hereby certify that on September 17, 2018, I filed the foregoing document electronically through the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record.

                    /s/ Cadence Mertz
                    Cadence Mertz